HYGIENIC PLATE ICE MANUFACTURING CO. v. RALEIGH AND
AUGUSTA AIR-LINE RAILROAD COMPANY.

(Decided June 5, 1900.)

*Damage by Fire—Origin of Fire—Sparks From Engines—*
*Evidence.*

Evidence of fires at various times and at other places, caused by
   sparks from other engines both before and after August 29 (the
   day of the fire) is incompetent, as not tending to prove the con-
   dition of engine No. 228 (the engine in question), nor to throw
   any light on the question directly before the jury, and was cal-
   culated to divert and mislead the minds of the jury to an unsafe
   verdict.   The principle which governs in such cases is stated in
   *Grant v. Railroad,* 108 N. C., 462, 470.

CIVIL ACTION to recover damages from fire communicated,
as alleged, by sparks from a locomotive engine of defendant,
and through negligence, partially destroying the ice factory of
plaintiff, tried before *Brown, J.,* at April Term, 1899, of the
Superior Court of WAKE County.   The ice factory was sit-
uated on defendant's right-of-way, under a lease, some two or
three hundred yards west of Union depot in Raleigh.   The
fire occurred between 8 and 9 o'clock at night on August 29,
1893.   The "offending locomotive engine," as charged, was
No. 228, which pulled out from the depot with a train and
passed the ice factory, emitting sparks, a few minutes before
the fire was discovered.

   Among the evidence offered by plaintiff and admitted over
defendant's objection, was that of several witnesses to show
that at several times, both before and after this fire, and at
other places on defendant's line, other engines of defendant
had, by sparks emitted, set fire to and burned the property
of other persons.   There was no evidence of the condition of

those engines and no explanation of the attending circumstances. The defendant excepted. The jury responded to the issues:

1. Was the property of the plaintiff set fire to and burned by sparks from defendant's engine? Answer. "Yes."

2. If so, was the cause of said fire due to negligence of the defendant or its agents in the operation or construction of said engine? Answer. "Yes."

3. Issue as to contributory negligence. (Withdrawn by the Court.)

4. What damage, if any, are plaintiffs entitled to recover? Answer. "$20,000."

Judgment in favor of plaintiff for $20,000. Defendant appealed.

FAIRCLOTH, C. J., writes the opinion of the Court.
DOUGLAS, J., writes dissenting opinion.

*Messrs. MacRae & Day; J. D. Shaw; J. B. Batchelor; W. H. Neal; C. F. MacRae,* and *R. T. Gray,* for appellant.
*Messrs. Ernest Haywood; F. H. Busbee; Simmons, Pou & Ward,* and *Armistead Jones,* for appellee.

FAIRCLOTH, C. J. This is an action for damages to plaintiff's property alleged to have been caused by defendant's negligence. The trial resulted in a verdict and judgment in favor of the plaintiff, and an appeal by defendant. For the purposes of this opinion the facts are as follows: The plaintiff's ice factory was located on the defendant's right-of-way, two or three hundred yards west of Union depot in the city of Raleigh. On August 29, 1893, between 8 and 9 o'clock, about 8.30 the plaintiff's ice factory was discovered to be on fire and was partially consumed; that about twenty minutes before the fire the defendant's engine, number 228, called

the Atlanta Special, pulled out from Union station going west, and passed the plaintiff's factory, emitting sparks, and soon thereafter the factory was discovered to be burning. The plaintiff alleged and proved the passing of said engine and fire at the time above stated, and there is no allegation or proof in the record that any other engine of the defendant passed by said place recently before or soon after the time the fire occurred. Carefully reading the record shows clearly that the contention at the trial centered on the question whether the damage was caused by said engine, No. 228.

There was much evidence and many exceptions to the admission and exclusion of evidence, and to instructions given to the jury by the Court.

During the trial, the plaintiff offered and was allowed, over the defendant's objection, to introduce the evidence of several witnesses to show that at several times, both before and after this fire and at other places on defendant's line, other engines of defendant had, by sparks emitted, set fire to and burned the property of other persons—one witness testifying that it was a common occurrence for these trains to set the fields on fire, but he did not know whether it was done by the defendant's trains, it being proved that at those points another railroad runs parallel with and in a few feet of the defendant's track. This testimony was heard by the jury without any evidence of the condition of these engines, and without any explanation of the attending circumstances. Another witness said that in 1894 the remains of said factory building caught on fire directly after the defendant's freight train passed, and constantly before and since, and that the old field caught on fire in March, 1894, two or three times near the bridge.

This evidence of fires at various times and at other places, caused by sparks from other engines, both before and after

August 29, we must hold to be incompetent, as it does not tend to prove the condition of engine No. 228, nor to throw any light on the question directly before the jury. It was well calculated to divert the minds of the jury and lead them to an unsafe verdict.

The principle which governs in such cases was brought to the attention of the Court in February, 1891, in the case of *Grant v. Railroad,* 108 N. C., 462, 470; the plaintiff was injured by derailment of defendant's train, and on the trial he offered to show that a similar accident occurred soon before and afterwards at other places, to a train run by the same engineer and conductor. The Court said: "The condition of the defendant's railroad track at places other than that at which the accident in question happened, could not prove or disprove the condition of the track at the latter place," and that such evidence would certainly tend to mislead the jury.

In October, 1891, the same question was before the Court in Pennsylvania, and is on "all fours" with the case before us. It was Henderson v. Railroad, 144 Pa. St. Rep., 461. After able and elaborate arguments the Court held: 1. "In an action for a loss by fire, caused by sparks from a locomotive engine of a railroad company, the burden is on the plaintiff to prove that the fire was communicated by some engine of the defendant company, and also to prove negligence in the construction or management of the engine; such facts, however, may be established by circumstantial evidence. 2. When the fire is shown to have been caused, or, in the nature of the case, could only have been caused by sparks from an engine which is known and identified, the evidence should be confined to the condition, management and practical operation of that engine; and testimony tending to prove defects in other engines of the company is irrelevant and inadmissible. 3. If, however, the offending engine is not clearly or satis-

factorily identified, it is competent for the plaintiff to prove, in support of the allegation that the fire was caused by the defendant's negligence, that the defendant's locomotives generally, or many of them, at or about the time of the occurrence, threw sparks of unusual size causing numerous fires on that part of its road. 4. This class of testimony is exceptional in character at the best, and is admissible only because direct evidence is impracticable; the examination, therefore, will be confined to the negligent operation of the engines at and about the time of the fire, with such reasonable latitude, before and after the occurrence, as is sufficient to make such proofs practicable."

We have quoted freely from this case because it covers several practical points of this subject, and because it seems unnecessary to cite other cases of a similar bearing. The principle is not only supported by authority, but it appears to our minds to be correct, and a just rule to be applied in jury trials.

There are some decisions modifying this rule and perhaps seem inconsistent with it; but the reasoning in some of them is not satisfactory, and we do not cite or discuss them.

What we have said shows error and requires a new trial. At the next trial it is probable that many of the other exceptions will be eliminated and we will not therefore discuss them at present.

*Venire de novo.*


DOUGLAS, J., dissenting. I can not concur in the judgment or opinion of the Court. The only ground for granting a new trial appears to be the admission of testimony as to the condition of other engines. Under the circumstances of this case I am inclined to think that the admission of such testimony was competent in any view, but whether this is so or not,

51——116

it is clearly admissible in rebuttal of the defendant's evidence. The defendant had previously introduced Parish, foreman of its round-house, who testified on direct examination, that he did not remember anything about the particular time of the fire or the particular engine, but that he did not permit any engine to go out of the round-house without being in thorough repair. The object of his testimony clearly was to prove that this particular engine, of which he had no recollection, must have been in good repair at that time because *all* the engines were constantly kept in repair. The plaintiff simply answered this by showing that the other engines were not always kept in perfect repair, because they had set fire to property in such a way as could not have happened if they had been equipped with spark arresters such as described by the defendant's witnesses. Such evidence was strictly in rebuttal.

But it may be said that the plaintiff's counsel on the cross-examination of Nowell, a witness for the defendant, asked him about some engines that had been burned, and thus opened the door to the defendant. It seems a very little crack to open so wide a door. But admitting it to be so, the defendant did not shut the door, but opened it still wider. If it was left wide open by the defendant, why could not the plaintiff enter?

But another view suggests itself. In *Neal v. Railroad,* at this term, this Court has held in effect that all the testimony of the plaintiff's witnesses, whether given on direct or cross-examination, is the plaintiff's testimony. Why is it not so as to the defendant?